Rhonda **TAYLOR**, Appellant,

v.

**UNITED MISSOURI BANK OF KANSAS CITY**, Appellee.

No. 82–1463.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1982.

Decided Nov. 26, 1982.

Jay T. Grodsky, Larry M. Brummet, Kansas City, Mo., for appellant.

Charles E. Patterson, Katherine J. Rodgers, Kansas City, Mo., for appellee.

Before BRIGHT and ARNOLD, Circuit Judges, and MEREDITH, Senior District Judge.*

MEREDITH, Senior District Judge.

Petitioner Rhonda Taylor ("Taylor") appeals an order of the District Court [1] granting summary judgment against her and dismissing her cause of action for conversion. For the reasons set forth below, we affirm.

## I.

The relevant facts are not disputed. On June 30, 1978, Taylor purchased a new Triumph TR–7 for a total purchase and finance price of $9,568.88. Taylor paid a cash down payment of $3,290 and agreed to pay the financed balance in monthly installments, beginning in August, 1978. The dealer subsequently assigned the note and security agreement ("the Agreement") to respondent, United Missouri Bank ("the Bank") with recourse.

During the months of July, August and September, 1978, Taylor experienced numerous problems with the car and returned it to the dealer for repair on three separate occasions. Because of the problems she en-

countered, Taylor refused to pay the Bank the August and September installment payments due under the terms of the Agreement. Taylor did not notify the Bank of the reasons underlying her decision to withhold the payments. Pursuant to the terms of the Agreement, the Bank accelerated Taylor's payments and declared her in default. On September 19, 1978, after unsuccessfully attempting to locate Taylor, the Bank exercised its contractual right to peacefully repossess the car.[2]

Following repossession, Taylor tendered the two delinquent payments to the Bank. The Bank refused the payments and offered to redeem the car only upon payment of the full purchase price. On October 31, 1978, Taylor elected to revoke her acceptance of the car. Petitioner has, to date, received $6,000 from the dealer in settlement of her claims against it for breach of warranty and conversion.[3]

## II.

Petitioner seeks compensatory and punitive damages from the Bank, alleging that the Bank unlawfully converted her property by its self-help repossession of her car. Under Missouri law, in order to recover in an action for conversion, Taylor must prove that the Bank's repossession of the Triumph wrongfully interfered with her right to possession. *See Price v. Ford Motor Credit Company*, 530 S.W.2d 249, 255 (Mo.App.1975). It is undisputed that, on September 19, 1978, the Bank had a contractual right to repossess Taylor's car. Therefore, the contract, standing alone, would mandate dismissal of petitioner's action for conversion because petitioner no longer had a superior right to possession.

Taylor argues, however, that Mo.Stat. § 408.405 supersedes the contract terms

---

* The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

2. Paragraph 15 of the Agreement granted the Bank "the right to retake the property at any time that debtor is in default either by peacea-

ble repossession or by replevin" without notice or hearing.

3. Taylor recovered her down payment of $3,290 plus interest of $337.23 from the dealer pursuant to a state court action for rescission of the contract and breach of warranty. In addition, the dealer settled petitioner's claim for conversion brought against it in the present suit for the sum of $2,372.77.

and provides her with the requisite right to possession.[4] The statute modifies the harshness of the holder in due course doctrine as it pertains to consumer buyers of goods and services. Generally, the statute provides that the Bank's rights, as holder of the Agreement, are subject to all of petitioner's defenses and setoffs arising out of the sale of the car, but only as to amounts then owing and as a matter of defense to or setoff against a claim by the Bank.

Taylor's statutory argument is as follows: that she had a valid claim against the dealer for breach of warranty; that she was entitled to "setoff" the purchase price of the car in the amount of her breach of warranty damages; that the Bank made a "claim" for payment as each installment payment came due; that the Bank's claims for payment were subject to Taylor's right to setoff the purchase price of the car; and that, because the breach of warranty damages exceeded the Bank's claims for payment, she was entitled to withhold such payments to the Bank. Taylor concludes that she was therefore not in default under the terms of the Agreement and the Bank did not have the legal right to repossess the car.

The pivotal premise underlying Taylor's argument is that the Bank made a "claim" within the meaning of the statute upon the due date of each installment payment. Absent that premise, her argument, together with her common law action for conversion, must fail.[5]

The statute itself does not define the term "claim". Moreover, this Court is aware of no Missouri decision which has squarely addressed this issue. However, we conclude that under any reasonable interpretation of the word "claim", it does not embrace a mere legal right, without more. Under even the broadest definition, a claim requires that one exercise that legal right by an affirmative act or demand for payments due.

Under the facts of this case, it is not necessary for this Court to determine whether the legislature intended to restrict the term to claims made in the judicial forum or whether it intended to broadly define the term to encompass non-judicial affirmative acts or demands. We recognize that the Bank's demand for the full purchase price of the car as a condition precedent to Taylor's right to redeem it may well amount to a claim within the statute. It is not necessary for us to reach or decide that issue, however, because Taylor did not choose to avail herself of any rights she might have under the statute. Instead, she elected to revoke her acceptance of the car, and by that conduct, waived her right to possession of the automobile.[6]

We hold only that a contractual right to receive payments from a consumer debtor, without more, does not constitute a "claim" within the meaning of Mo.Stat. § 408.405. Because the Bank made no statutory "claim" against petitioner, she cannot avail herself of the statutory defenses. Therefore, the Agreement alone controls

4. The statute provides in pertinent part that:
"The rights of a holder or assignee of an instrument ... which evidences the obligation of a natural person as buyer ... in connection with the purchase or lease of consumer goods or services, are subject to all defenses and setoffs of the debtor arising from or out of such sale or lease, notwithstanding any agreement to the contrary, only as to amounts then owing and as a matter of defense to or setoff against a claim by the holder or assignee; provided, however, with respect to goods only, the rights of the debtor under this section may be asserted to the seller ... and must be so asserted within ninety days after receipt of the goods." Mo. Stat. § 408.405.

5. The statute imposes two important limitations upon the consumer debtor's rights: the consumer may assert her rights against the holder "only as to amounts then owing" and then only "as a matter of a defense to or setoff against a claim by the holder...." The language dictates that the Bank must make a claim against the consumer before the consumer can assert her statutory rights.

6. The result in this case might be different if Taylor had made it possible for the Bank to assert a pre-repossession claim against her. The Bank had attempted to contact Taylor at home and at work. However, Taylor had changed her residential telephone number to an unlisted number and had left her place of employment with no forwarding address.

the rights and obligations of the parties. The Bank exercised its right under the Agreement to peacefully repossess petitioner's car. Accordingly, as a matter of law, petitioner's common law action for conversion must fail.

ARNOLD, Circuit Judge, concurring.

As an original matter, it would be hard for me to agree with the Court's construction of the word "claim" in Mo.Ann.Stat. § 408.405. The Court seems to assume for purposes of this case that "claim" includes "an affirmative act" by the holder of a buyer's note. *Ante,* p. 65. Surely the Bank's repossession of the car was an affirmative act. Possibly the word "claim" could be limited to requests for payment or other relief made in some court. But that reading—which the Court does not adopt, *ante,* p. 65—would mean that a holder of consumer paper would almost always use self-help rather than going to court, where § 408.405 would clearly apply. It is hard to believe that the Missouri Legislature, in enacting a law to help consumers who have bought defective goods, intended to create such a large incentive for financial institutions to avoid the judicial process.

In addition, the fact that Ms. Taylor did not tell the Bank of her problems with the car seems irrelevant under the statute. She did complain to the seller, and this is all the law requires. Apparently the Legislature expected a seller to inform the assignee of its consumer paper of such claims by buyers of breach of warranty, or perhaps it intended to put the burden on banks to inquire of their assignors whether a debtor had asserted rights within the 90-day statutory period. Either way, Ms. Taylor did all she needed to do under the law, and was therefore in a position, when the Bank purported to exercise its right to retake the property under Paragraph 15 of the security agreement, to claim that the right to possession remained in her because she was not in default.

I cannot wholly agree with the Court's assertion, *ante* p. 65 n. 6, that Ms. Taylor made it impossible for the Bank to get in touch with her by changing her phone to an unlisted number and leaving her job without giving a forwarding address. While these actions did make the Bank's position more difficult and should not be condoned, it was still possible for the Bank to find the car and take it back. I am not convinced that the car's owner could not have been found as well.

Nevertheless, I reluctantly concur in the judgment. The issue is one of interpretation of a Missouri statute, about which we know a good deal less than the district courts sitting in that State. There is no opinion of a Missouri appellate court contrary to the District Court's decision, and its construction of the statute, although strained, is not verbally untenable. In this kind of case, we should defer to the decisions of the district courts on questions of state law. My decision to concur is aided by the fact that the author of this Court's opinion is himself an able and experienced Missouri district judge.